M. E. STROUD et al. <em>v.</em> S. W. WEEMS.

**Ejectment — Plaintiff's Title.**

> A plaintiff in ejectment, seeking to recover possession of land occupied by another, cannot recover when he fails to show that title to the land has vested in himself.[1]

Ejectment by appellee against appellants to recover possession of certain land described in his declaration. From verdict and judgment for plaintiff, defendants appeal.

The opinion of the court contains a statement of the facts as to plaintiff's claim of title. Appellees are the widow and children of W. P. Stroud, who died intestate, and the owner of the land sued for. By his will he gave to his wife, M. E. Stroud, all his

---

[1] In an action of ejectment, the plaintiff must show his title good as against the whole world to entitle him to recover. Johnson *v.* Helm, 1 Miss. Dec. 170, and cases cited in notes.

real estate, "to have a lifetime right to and control of for her own use and benefit, and that of the said children; she to support on it and rear the children, and to educate them so far as she can do, after using what may be necessary to live on, and at her death what may then remain to be equally divided between the children."

APPEALED from Circuit Court, Holmes county, C. H. CAMPBELL, Judge.

Reversed and remanded, April 16, 1883.

*Attorney for appellants, Frank Johnston.*

*Attorney for appellee, H. S. Hooker.*

Brief of Frank Johnston:

The judgment of the Circuit Court must rest on the theory that Mrs. M. E. Stroud had the absolute power of alienation under the will of her deceased husband; and that her conveyance was effectual to pass title to her vendee to all the estate in the land belonging to the minor devisees. This, I respectfully submit, is an erroneous view of the will. It was not the intention of the testator either to give all the property to his wife or to invest her with the power of alienating any part of the property. I will add that a sale of the property was not only in violation, but it was destructive of the trust.

The first clause gives all the property, real and personal, to the wife and the children, naming them, including all after born. But as there were no children born after the will, this direction is immaterial, except as illustrative of the idea that all the children were to share in the property and its use or usufruct.

The wife was to have a lifetime right to and control of the property. But this lifetime control was to be for the joint benefit of herself and children for purposes of support. Thus: they were to have a support out of the property, and if there was anything over a support for them all, then this surplus was to go exclusively for the education of the children.

At the mother's death, "what may then remain" to be equally divided between the children then living. There is nothing to

indicate that the widow was to take the whole property. On the contrary, there is everything to indicate that she was to take a limited share, and that in her usufruct alone, and this with the clearest implication for her life. And again, there is nothing to indicate any intention to give her the power of alienation. It is difficult to see how the power of alienation is not in conflict with the very terms of the trust.

The first clause, or first sentence, of the will gives the property to his wife and all the children, indicating after-born, of that marriage. But it does not declare the terms or manner in which they shall take.

The next clause, however, limits the duration of the wife's estate or interest, by very clear expressions, to her life in point of time. And the next succeeding clause, or sentence, declares the trust, and defines the limits of the wife's interest in point of extent. That is, she is to control the same for the joint use and benefit of herself and children. And then follows even a more particular direction of the usufruct during her life, in this, that they are first to have a *support, all of them.* And after this, if there is anything over, it is to go to educate the children. Finally, at her death, it is to be equally divided among the children living at the time of her death. Her interest in the property was limited not only to her life, but to a support jointly with all her children. And all the income over the joint support was to go to the education of the children. That the property was to be kept together during her life is plainly manifested by the direction that she is to have the lifetime control of it, and also by the direction that it is to be divided at her death. Until that time it was to be kept together. The direction to her to control and manage the property for the joint benefit of herself and children, in the manner indicated, was a power coupled with a trust reposed personally in her.
\* \* \*

In a very similar case, Lucas *v.* Lockhart et al., 10 S. & M. 466, it was held by the court that no part of the property thus impressed with such a trust could be taken in proceedings *in invitum* for the widow's debts—on the principle that a sale would defeat the trust. A conveyance by the wife, clearly, would have the same effect.
\* \* \*

The provision for the division of the property equally, with the

words "what may then remain," falls far short of giving·a *power* of alienation by implication. The whole will is to be looked to. Its meaning to be gathered from all the language used and not from a few words. After getting the *intention,* then vague or uncertain phrases and doubtful implications must yield. The idea of the testator evidently was that the property would yield a support to all the objects of his bounty, that probably there would be enough to educate the children, and then, if there had been any surplus over that, it would have belonged to the children, and not to their mother. *She* is directed to control the property for her life, and is to have a support on it during her life. This is all widely inconsistent with an absolute power of sale.

The expression, "what may remain," may refer to the personal property that was perishable. It may allude to a possible accumulation of income. Or, if it refers to the "remainders" in the land, it is not far from being technically correct, if indeed it does not correctly convey or present the idea of a remainder being what remains after carrying out the life estates and uses for the life of the widow. It is impossible to raise by this remote and strained implication the idea that the estates so clearly given to the children were thus to be defeated. I refer to the general rule that estates.clearly granted are not to be defeated by uncertain phrases or implications, and the general intent is to govern where there are apparent inconsistencies. 50 Miss. 15.

The expressions in wills, in respect to the payment of debts and legacies, thus, "I give, after payment of debts and legacies, the rest and residue," present no analogy. And seen in those cases, a *charge merely was implied,* to be enforced by the courts, and not a power of sale in a trustee or executor. 47 Miss. 471.

Brief of H. S. Hooker:

The only question of importance presented in this case is the construction of the will of W. P. Stroud. Whether a property or estate was, by the will, conveyed to the wife; whether a power to sell and convey and mortgage was given to her; or whether she was a naked trustee, with only the power to use the income of the estate in the support of herself and family. If the effect of the will was either to create a life-estate in Mrs. Stroud or to confer a power of sale, then the judgment was correct.

We call the attention of the court to the principal clauses affecting the right of Mrs. Stroud to sell. The first clause conveys both the real and personal estate, except that thereinafter disposed of, to his wife and children. She to have a lifetime right to and control of same for her own use and benefit and that of said children. There is thus far no direction as to how she shall use the property for their benefit, whether she shall sell and dispose of any of the personalty or realty, if necessary, for the support and maintenance of herself and children. The will then proceeds to say that she is to support on it and to rear the children and educate them, as far as she can do, after *using* what may be necessary to live upon, and at her death, what may then *remain,* to be equally divided. These clauses clearly show that the testator contemplated something being taken from the *corpus* of his estate, or that it might be necessary for his wife to dispose of his estate, or a part of it, in the support and maintenance of herself and children. There is an implied power to sell, dispose of, and diminish the *corpus* of the estate at her discretion in the support of the family, and the remainder, what is left, to be equally divided between his children.

He then proceeds to give his son, Paul Stroud, $200, and then directs how the money is to be raised to pay his debts and the above legacy, and then finally directs his executor, after having made sale of certain property, to turn over the remaining property to his wife, Mary E. Stroud. These are the material facts of the will.

The case is somewhat analogous to the case of Yates *v.* Clark, 5 C. M. 212. There the will was to the wife, to have, use and employ all his property for her own use and that of her children, and "to dispose of same in such manner as she may think is for their mutual advantage," and it was held that she had the power to sell as an individual. In this case she is to use, and the remainder, at her death, is to be divided, clearly implying that its use involved its consumption. The power to sell or hypothecate the property for advances to herself and children are necessary inferences from the language of the will. The property was all to be delivered to her by the executor, and she was to have entire use and control of same, and if there was any of the property left at her death the same was to be divided. None of the property was to be turned over to her until the debts and legacy of the testator had been paid.

The executor was directed to sell for cash the personal property, except a mule and two milk cows. Under the will the property she received was the land principally, and when the word "remainder" is used in connection with the land, it must mean that she had the right to dispose of a part or all of it, otherwise there could not be a remainder

The words, "If any remains, "What then remains," and words of similar import, have been frequently construed by the courts as giving the power of disposal.

McKenzie's Appeal, 41st Conn. 607, where a testator gave his widow certain personal estate for her life, and provided that if *any remained* at her death, it should· be equally divided amongst his children. Held, that an absolute power of disposal was given to the widow. Atty. Genl. v. Hall, Fitz. 114; Jackson v. Bull, 19 Johns. 20; Ramsell v. Ramsell, 21 Miss. 280.

In the latter case the same inference or implied power of sale was given to the words, "if any remains."

In Harris v. Knapp, 21 Pick. 416, in speaking of the words, "whatever shall remain," the court says that the implication is inevitable that the legatee had power to make such a disposition, and that this is inconsistent with the supposition that the whole was to remain undiminished in the hands of the trustee. 4 Kent. 270.

Counsel for appellant, in their brief, say that the widow was only to have usufruct of the property during her life, and then the property was to be divided between the living children. This is an assumption based on a misconception of the words of the will. It is not true that the will provided that the property should be divided, but that the *remainder* of the property should be divided, what should remain at her death. As the property that would come to her under the will, with an insignificant exception, was real estate, there could be no remainder without a sale, and hence there is necessarily implied the power of alienation.

Hall v. Preble, 68 Miss. 100, to devise to widow with power to hold and use during her life, and to expend all, if necessary, for her care, etc., held, she had authority to convey the real estate in fee, and her quit claim deed was an execution of the power.

It is true that the question here presented, to wit, the implication of a power of sale from the use of the words, "what shall remain at the death of the life tenant," was not the material point

involved in some of the cases, but in each one the effect of such clauses was determined. Even the prefatory words would have to give way to the clear power of disposition given to the widow. Perhaps a better idea of the will could be obtained by transposing the clauses of the will.

The case is not distinguishable in principle from the cases cited, whether she holds for herself or for herself and children, the effect of the terms of the will is to give her the power of disposing of the property. If any limitation exists on her power, it is only that it should be for the benefit and support of herself and children. It is respectfully submitted that the judgment of the court is correct.

OPINION—COOPER, J.:

So far as is shown by the record, no title to the land sued for has ever vested in the appellee, even if it be admitted that Mrs. Stroud, under the will of her husband, had the power to mortgage the lands for the support of herself and her children. The claim of title shown, is first, the will of Stroud; second, a deed of trust made by Mrs. Stroud on the 12th day of January, 1876, to one W. H. M. Durham, trustee, to secure a debt to Weems & Co.; third, a conveyance made by one R. H. Montgomery, who professed to convey as substituted trustee in a certain other deed of trust made by Mrs. Stroud on the 18th day of April, 1879, to one F. E. Doggett, trustee, to secure another debt due to Weems & Co., which deed of trust was not introduced in evidence.

The plaintiffs attempts to prove title by showing title in Durham and a conveyance from another. The real question in the case is however, probably settled by the case of Stokes *v.* Payne, Kennedy & Co., 58 Miss. 614.

*The judgment is reversed* and the cause remanded.